GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY
v. J. W. BOTTS.

Decided February 7, 1900.

**1. Practice in Trial Court—Special Issues.**

Where a special issue submitted to the jury called for the aggregate amount of damage occasioned to a shipment of cattle, and the jury answered "two dollars per head," without finding the number of the cattle, this could not suffice as the basis of a judgment, even though there had been no conflict in the evidence as to the number of the cattle. Rev. Stats., art. 1333.

**2. Carriers—Verbal Contract of Shipment.**

Where a verbal contract of shipment was made and the freight paid, and after the cattle had proceeded on their journey, the shipper was required to sign a written contract on the train, which he did without reading it, the verbal contract controlled the shipment.

**3. Same—Connecting Lines.**

Where the initial line contracts for a through shipment over connecting lines to the point of destination, it is, under the statute, liable for damages inflicted on the lines of its connecting carriers, no matter what restrictions be inserted in the contract. Rev. Stats., 331a, 331b.

APPEAL from Gonzales. Tried below before Hon. M. KENNON.

*Harwood & Walsh* and *A. L. Jackson,* for appellants.

*T. H. Spooner,* for appellee.

FLY, ASSOCIATE JUSTICE.—Appellee sued the Galveston, Harrisburg & San Antonio Railway Company and the San Antonio & Aransas Pass Railway Company to recover damages to cattle shipped from Gonzales, Texas, to Ganahl, Texas. The cause was submitted on special issue to a jury, and on their answers a judgment was rendered for $649, and over against the San Antonio & Aransas Pass Railway Company in favor of the Galveston, Harrisburg & San Antonio Railway Company for the same sum.

The cause was submitted to the jury upon special issues. The tenth issue submitted to the jury was as follows: "What do you believe, from a preponderance of the evidence, was the aggregate depreciation, if any, in the market value of plaintiff's cattle at Ganahl by reason of their remaining in the cars at Ganahl from the time of their arrival at that point until they were unloaded? In answering this question you will disregard the value of any cattle you find were dead at Ganahl." The answer was: "Yes. Two dollars per head." It is evident that

this answer is not responsive to the issue submitted. · The jury was instructed to find for the total damage to all the cattle; the jury finds the damage to each one of an unspecified number of cattle. Upon this answer a judgment was rendered for damages at the rate of $2 a head on 308 cattle, all that were shipped save and except one cow which the jury found was killed. In order to frame the judgment the court was compelled to leave the findings of the jury and look to the evidence in aid of defects in the verdict. The court, independent of the answers of the jury, was thus compelled to find that there were 308 cattle damaged in the sum of $2 each, although in the petition it is claimed only 307 head were damaged, and upon this finding of the court is predicated the judgment. It is urged by appellee that there was no controversy about the number of cattle, but an inspection of the answers of the two appellants reveal that they do not admit that 308 or any number of cattle were damaged by them. Neither does it matter that the uncontradicted proof may have shown the number of cattle, and that each one of them was damaged, for the testimony can not be consulted to supply an omission in the findings made by the jury. In the case of Moore v. Moore, 67 Texas, 293, on the question before us it was said: "It is the right of the parties to have the jury pass upon all of the facts controverted by the pleadings, and when they have omitted to do this, however clear and undisputed the evidence upon the issues not found, the court can not render judgment without usurping in part the functions of the jury, and thereby render judgment infringing a right guaranteed by the Constitution and laws." It is not contended, and could not be with reason, that the answer of the jury was responsive to the issue submitted, and "a verdict is bad if it varies from the issue in a substantial matter, or if it find only a part of that which is in issue." Patterson v. United States, 2 Wheat., 221.

The cases of Umscheid v. Scholz, 84 Texas, 265, and Heflin v. Burns, 70 Texas, 347, are cited by appellee on the proposition that the testimony can be looked to in aid of a special verdict. In the first case the question does not arise at all. In the second case it was stated that "our courts uniformly hold that when a special verdict is rendered, no other facts can be looked to in aid of the judgment." There is nothing in the opinion that tends to support the contention that the evidence can be looked to in aid of a judgment based on a special verdict.

In article 1333, Revised Statutes, as well as in the amendment to it on page 190 of the general laws passed at the session of 1899, it is provided that "the verdict shall comprehend the whole issue, or all the issues submitted to them." One issue, the aggregate amount of the damages sustained by the cattle, was not found by the jury in this case.

Prior to 1897 it was the rule that when a case was submitted on special issues all the issues of fact made by the pleading must be submitted and determined by the jury before a valid judgment could be rendered, but article 1331, Revised Statutes, was passed to remove

the rigor of the rule, and it was provided that the omission to submit an issue should not be ground for reversal unless it had been requested by a party to the cause. This statute, however, did not make any change as to the rule requiring the answers to be responsive to the issues submitted, and indeed no such change could be tolerated because it would be striking at the very base of trial by jury.

A verbal contract was entered into between the initial carrier and appellee for shipment of the cattle, at a specified rate, from Gonzales to Ganahl, and appellee was required to sign the written contract on the train after the cattle had proceeded on their journey. Appellee had paid the freight the day before the shipment, and without reading the written contract signed it. We think the verbal contract controlled the shipment. Railway v. Grant, 6 Texas Civ. App., 674; Railway v. Carter, 9 Texas Civ. App., 677; Railway v. Withers, 16 Texas Civ. App., 506; Railway v. Avery, 19 Texas Civ. App., 235; Railway v. Wright, 20 Texas Civ. App., 136.

But if no other than the written contract had been introduced in evidence, the Galveston, Harrisburg & San Antonio Railway Company would be liable because, as initial carrier, it contracted for a shipment from Gonzales to Ganahl, and under the provisions of article 331a and 331b, Revised Statutes, would be liable for damages inflicted on the line of its connecting carrier as well as on its own line, no matter what restrictions were inserted in the contract. And the facts indicating acquiescence on the part of the connecting carrier in the contract made by the initial carrier, it would also be liable for any damages occurring anywhere along the route. Railway v. Bigham (Texas Civ. App.), 47 S. W. Rep., 814; Railway v. Randle, 18 Texas Civ. App., 348.

All the cases cited by the appellants to show that the shipment was not a through one were rendered prior to the passage of articles 331a and 331b, except the case of Railway v. Vaughn, 16 Texas Civil Appeals, 403, which has no application, because the shipment was an interstate one.

It is provided in article 331b, above cited, that the carrier through whose negligence the loss occurs shall be liable to the connecting carriers for any sums for which they are held liable, and if the loss occurred on the line of the connecting carrier, judgment could be properly rendered.

Other questions raised by assignments of errors will not probably arise on another trial, and need not be considered.

For the error indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*