ACCEPTED
04-17-00626-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/28/2017 12:02 PM

No. 04-17-00626-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
09/28/2017 12:02:17 PM
KEITH E. HOTTLE
CLERK

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
SAN ANTONIO, TEXAS

IN RE SOUTHCROSS ENERGY PARTNERS, CP LLC, *Relator*

Original Proceeding
From the 229th Judicial District Court, Duval County, Texas,
Trial Court Cause No. DC-16-139

## RESPONSE TO RELATOR'S MOTION FOR TEMPORARY RELIEF

TO THE HONORABLE COURT OF APPEALS:

Plaintiffs/Real Parties in Interest Ivy Gonzalez, on behalf of M.R. Gonzalez and M.N. Gonzalez, minor children; Amy Gonzalez and Jesus Gonzalez, Sr., as heirs at law of Jesus Gonzalez, Jr.; and Rene Elizondo (collectively, "Plaintiffs") respectfully file this response to the motion for emergency relief.

## Introduction

Relator's hyperbole in the motion for temporary relief is divorced from both the governing law and the actual facts of this unusual case. Even more important, the motion seeks premature relief from a purely speculative and hypothetical harm. The trial court has acted carefully, in accordance with a long line of Texas precedent, and it has not yet made a decision about rendition of judgment—and when it does, if that decision is adverse to Relator, it will have an adequate remedy by appeal.

## Procedural History

The petition for writ of mandamus and motion for temporary relief assume that the trial court has already made a definitive decision to render judgment on the basis of the final verdict. But the district court has *not* made such a determination. It received both the first and second verdicts and expressly reserved judgment on the question of which one will be used as the basis for a judgment.

In due course, we will dispel many of the inaccuracies in Relator's description of the background facts. But first, it is essential to dispel this fundamental distortion. The trial court *has not decided* which verdict will form the basis of a final judgment. On the contrary, the trial court recalled the jury, polled all 12 jurors individually, then retired the jury for further deliberations and received a corrected verdict solely for purposes of developing a complete record before the jury was finally released. The court repeatedly made clear, both before and after this procedure, that it was *not* prejudging the outcome of the procedure; its decision "to err on the side of caution" by undertaking this procedure "does not mean that I am agreeing with the plaintiffs." Rather, "to err on the side of caution I would rather bring them in, poll them one at a time, separate them as I am polling them," then decide what to do. MR 171-72. "[B]efore anybody starts jumping to conclusions I think my only route is to poll them individually and then we take it from there." MR 174. "I am trying really hard to do the right thing and I still haven't said what I am doing to do." MR 180.

2

Ultimately, the court polled the twelve jurors over the Defendants' objections, but using questions approved by defense counsel. MR 180-82.

> THE COURT: This is what I am thinking. Why don't I ask the first question will be what is your understanding of your award.
>
> MS. BARGER: Yes.
>
> THE COURT: That's open-ended. What's your understanding of what you awarded?
>
> MS. BARGER: Yes.
>
> MR. POST: That's fine.
>
> THE COURT: Second question did you talk to anybody after your verdict. Who did you talk to. Where did you go, and how far did you go.
>
> MS. BARGER: Correct.

MR 182. The court made its intention clear: "I am not saying this is going to go any further than tonight but we'll have a record like immediately rather than a week from now." MR 182-83.

After polling the jury, the Court recognized that the presiding juror had spontaneously volunteered the jury's error in completing its verdict form and the court was impressed by the fact that all 12 jurors were consistent in their statements to the court regarding the intent of their verdict, *see* MR 221, 231, so it decided to retire the jury for further deliberations. MR 227-36. Again, the court made clear that it was not prejudging the outcome of this process:

3

> [W]hen we enter judgment and both of you have the opportunity to brief and I am going to enter one or the other based on your briefing . . . won't you be able to make that argument next week?

MR 227.

> Next Friday [*i.e*., September 29, 2017] I decide.

MR 230.

> [Y]ou don't know what I am going to do next week. . . .

> [W]e are having a meeting – we are having the judgment [hearing]. We have got to enter judgment. . . .

> So I need to know what I am going to enter and y'all better have your briefing done and everything else. Everybody. . . .

> Before next Friday. The hearing will be either Thursday or Friday. . . .

> Here. With bells on.

MR 235-36.

At this point, the Court retired the jury to conduct further deliberations—again, over the Defendants' objections, but using minimalist instructions and the original verdict form as suggested by defense counsel. MR 233-37.

After the jury returned its final verdict, the Court announced that it would decide which verdict to accept as the basis for its judgment *only after* receiving briefs that were due to be filed on Wednesday, September 27, 2017, and holding a hearing that it set for Friday September 29, 2017. MR 247-250. The transcript leaves no doubt that the trial court has *not* prejudged the issue:

4

THE COURT: Y'all may be seated. Okay. So, the record will reflect it is now, uh, 10:41 p.m. The jury has come back with this other verdict and so, uh, I expect you all have a lot of work ahead of you, all of you, for next week, when I have to enter judgment.

MS. BARGER: Yes, Your Honor. As you know we don't accept this verdict so we will do briefing.

MR. GIEGER: Yes.

THE COURT: I hear you. The Court has received the verdict.

MR. POST: Your Honor, formally of course the plaintiffs do move to accept the verdict and we'll be submitting briefing but I want the record to reflect that we are moving to accept this verdict as the true verdict of the jury.

MR. GIEGER: Since that's the motion that's now been made, obviously we now we object to receiving this judgment or verdict.

THE COURT: Well in light of the testimony that was given after the Judge, uh, polled all of the jurors, the Court found their testimony to be credible so I feel like I have to receive the verdict and I will be doing that but again you all have a long road ahead of you next week.

MR. GIEGER: Judge, have you determined what day we are going to have the a hearing yet?

THE COURT: Bring my calendar. How long do you all anticipate those argument are going to take; a couple of hours? Well you are going to give me briefs, give me case law.

MR. GIEGER: How much to argue the motion?

MR. POST: Your Honor, my first instinct was that an hour was enough time but I understand the magnitude so if you want to leave two hours that should be safe. My sense is an hour should be enough.

MS. BARGER: And if we have your briefing, I mean, maybe we should prepare our briefs and some cases for you in advance so –

5

THE COURT: Yes the sooner you can get briefs to me guys, I mean, the more prepared I can be that day.

MR. POST: Of course.

THE COURT: And of course I encourage you all to talk, please. So, uh, let's see. What I will do is I will go ahead and -- let me do 9:30. 9:30 on Friday the 29th. 9:30 a.m., Friday September the 29th, entry of judgment and, uh, how soon do you think you can get some briefing to me in Starr County?

MR. POST: We were previously discussing to exchange on Wednesday.

THE COURT: Okay.

MR 247-250.

The court's final words left no doubt that its mind was not made up: "So we'll see where this goes next week after you have had an opportunity to take a step back, reassess your positions, look at the case law, then we'll figure it out." MR 250.

## Background Facts

The background facts that led the trial court to recall the jury, poll each juror, and retire the jury for further deliberations are not essential to deciding this motion (because all of those issues are subject to the consideration of the trial court at the judgment formation hearing of Friday, September 29, which this motion hopes to derail entirely). But lest the Court be misled by the exaggerated factual statements in the motion for temporary relief, some modest corrections are in order. The facts are addressed in more detail in Plaintiffs' motion for judgment. *See* Ex. A.

6

The motion implies that, after the jury returned its verdict and was released, Plaintiffs' counsel "spoke privately with jurors" and enticed them to recant their original verdict. Mot. at 1, 4-5. But to be precise, in a routine conversation between one of the Plaintiffs' lawyers and the presiding juror, the presiding juror *volunteered* the fact that the jury intended to award damages per year based on the life expectancy of the decedents even though it had not expressed that intention on the verdict form. MR 189. The trial court later found it significant that the presiding juror made this statement independently, MR 221, and emphasized the significance of the fact that the jurors had unanimously confirmed the jury's intention. MR 221, 231.

Plaintiffs' counsel promptly called the clerical error to the court's attention, MR 164, and the trial court then recalled the jurors. MR 164-67. There was no "brief hearing in which Plaintiff's counsel, but not Defense counsel, participated." MR 164. Quite the contrary, Plaintiffs' counsel and the court waited an hour for lead defense counsel to return before commencing any proceedings. MR 165-67.

Ultimately, the court polled each juror individually and learned that the jury had made an error in the completion of the verdict form. Relator's suggestion that the jurors were conflicted on this issue, Mot. at 6, cannot be squared with the record. *See* MR 195, 197, 199-200, 203, 204, 206, 208, 209, 211, 213, 217-19. Therefore, the court instructed the jury to retire for further deliberations pursuant to a long line of Texas precedent applicable to this admittedly rare scenario. *See* Ex. A.

7

**Argument**

The motion for temporary relief asks the Court to "stay all proceedings in the trial court, including the entry of judgment hearing set for 9:30 a.m. on Friday, September 29, 2017, and especially any [sic] the signing of any order, or judgment that would purport to give legal effect to the 'second verdict' returned by the improperly re-impaneled jury." Mot. at 2. That radical request should be denied.

**I.     Because the trial judge has not prejudged the issue, there is no basis for mandamus relief—much less emergency relief—on a hypothetical ruling.**

The Court should deny the motion because the harm it seeks protection from is hypothetical—not real or imminent. Relator's only actual fear is of the trial court issuing a final judgment based on the corrected verdict. Apart from the obvious fact that such a ruling would entitle the Relator to appellate remedies, *see infra* Part II, this fear does not warrant emergency relief because it is hypothetical speculation.

Relator asks the Court to "stay *all* proceedings in the trial court." Mot. at 2 (emphasis added). But it has not made such a request to the trial court, and in fact, the trial court has only one major question to be decided on Friday, September 29: Which verdict should the final judgment be based upon? Nothing else looms.

Obviously—but critically—the trial court has *not* made this ruling yet. It will do so after hearing both sides argue on Friday, September 29, 2017. *See* MR 230 ("Next Friday I decide."). Relator therefore predicates its entire motion on the *expectation* of losing the entry of judgment hearing. That will not suffice.

8

No one can say for sure what the trial court will do at tomorrow's hearing. Perhaps it will enter a judgment; but perhaps not; and even if it does, who is to say that the judgment it issues will favor the Plaintiffs? As the transcript above reveals, the trial court made it abundantly clear that the court has not prejudged the issue. The Relator is simply trying to deprive the trial court of the right to make a ruling on the assumption that (a) its position is inarguably correct and (b) the trial court cannot be trusted with the decision.

The first premise is simply not true, as the Court will see from a brief review of Plaintiffs' motion for judgment (Ex. A). But the second premise is unthinkable. Appellate courts can issue a mandamus against a trial judge who *refuses* to rule— but they cannot *prevent* a trial court from making a ruling within its lawful authority. What is truly "without an analog in Texas law," Mot. at 1, is Relator's request.

A mere "potential or hypothetical possibility" of adverse action "will not justify the issuance of mandamus relief." *Diocese of Galveston-Houston v. Stone*, 892 S.W.2d 169, 177 (Tex. App.—Houston [14th Dist.] 1994, no writ). It is settled that Texas appellate courts "will not assume in advance that [a] Respondent intends to refuse to perform his duty to follow the law." *Prof'l Bondsmen of Tex. v. Carey*, 762 S.W.2d 691, 694 (Tex. App.—Amarillo 1988, no writ).[1]

---

[1] Of course, the limits of mandamus apply to requests for auxiliary relief. Relator cannot achieve in the interim what it is barred from achieving at the end of the day.

Former Chief Justice Jefferson has made this point precisely: Appellate courts do not grant mandamus relief—much less emergency relief—"before the trial court has been asked to act." *In re Allied Chem. Corp.*, 227 S.W.3d 652, 666 (Tex. 2007) (orig. proceeding) (Jefferson, C.J., dissenting) (quoting *Dow Chem. Co. v. Garcia*, 909 S.W.2d 503, 505 (Tex. 1995)).

The motion runs afoul of these principles. Relators often seek relief by citing "an *expectation* of the trial court's future abuse of discretion, but [courts] generally presume that our judges follow the law." *Id.* Hence, the motion should be denied. The trial court should be allowed to proceed with its judgment formation hearing.

## II. There is no need for temporary relief because, if an adverse judgment is rendered on the corrected verdict, Relator will have an adequate remedy.

Second, if the trial court does render a final judgment for the Plaintiffs on the corrected verdict, the Relator will have an adequate remedy at law. It can file the usual post-judgment motions and appeal all the rulings about which it complains. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Appellate review of the issues identified by the petition is in no sense "elusive." *In re GlobalSanteFe Corp.*, 275 S.W.3d 477, 483 (Tex. 2008).

Relator cites a desire to "preserve the status quo," Mot. at 10, but to what end? There must be a final judgment in this case, and once it is rendered, if it is adverse, Relator can suspend its enforcement if necessary and appeal it. Tex. R. App. P. 24. There is no valid reason to derail the ordinary process of judgment and appeal.

10

## III.    Relator's petition is meritless.

Finally, it is appropriate to emphasize that Relator's petition for mandamus is founded on factual inaccuracies and gross overstatements of the governing law. Yesterday was the deadline for the Relator to send the trial court its brief regarding the validity of the corrected verdict in preparation for the final judgment hearing. Instead of writing a brief for that purpose, Relator assumed that an adverse ruling was inevitable and tried to leap-frog to the court of appeals. Its position is unsound.

In case the Court wishes to have a preview of the Plaintiffs' argument, Plaintiffs have attached their brief to the trial court on judgment formation issues. For the reasons stated therein, the district court would not be abusing its discretion by entering a final judgment based on the corrected verdict.

The trial court followed a procedure that has been approved by a long line of Texas precedent and confirmed by a recent United States Supreme Court decision. It took care to do so in a neutral way, and the record developed by the trial court shows that the jury committed a clerical error in filling out the initial verdict form—failing to express its full verdict on the form despite its agreement to that verdict. Juries may be recalled and ordered to deliberate further in such circumstances, and judgment may be rendered on the corrected verdict. Plaintiffs' motion for judgment explains these legal rules in detail. *See* Ex. A. But for now, it is sufficient to say that the trial court should be allowed to make its ruling on the entry of judgment.

11

## CONCLUSION

The motion should be denied.

Respectfully submitted,

Baldemar Gutierrez
balde@gutierrezlawfirm.com
J. Javier Gutierrez
javier@gutierrezlawfirm.com
Ana Gutierrez Castillo
ana@gutierrezlawfirm.com
**THE GUTIERREZ LAW FIRM, INC.**
700 E. Third Street
Alice, Texas 78332
Telephone: (361) 664-7377
Facsimile: (361) 664-7245

Mark A. Gonzalez
mgon3@yahoo.com
Attorney at Law
924 Leopard Street
Corpus Christi, Texas 78401
Telephone: (361) 882-6600
Facsimile: (361) 882-6608

Kevin W. Liles
State Bar No. 00798329
kevin@lilesharris.com
Stuart R. White
State Bar No. 24075268
swhite@lilesharris.com
Bryan K. Harris
State Bar No. 09054700
bkharris@lilesharris.com
**LILES HARRIS WHITE PLLC**
500 N. Water Street, Suite 800
Corpus Christi, Texas 78478
Telephone: (361) 826-0100
Facsimile: (361) 826-0101

By:   */s/ Russell Post*
    Russell S. Post
    State Bar No. 00797258
    rpost@beckredden.com
    Chad Flores
    State Bar No. 24059759
    cflores@beckredden.com
    Mary Kate Raffetto
    State Bar No. 24098296
    mkraffetto@beckredden.com
    **BECK REDDEN LLP**
    1221 McKinney Street, Suite 4500
    Houston, TX  77010
    Telephone: (713) 951-3700
    Facsimile: (713) 951-3720 (Fax)

    David L. Rumley
    State Bar No. 00791581
    drumley@wigrum.com
    Ross W. Evans
    State Bar No. 24064771
    revans@wigrum.com
    **WIGINGTON RUMLEY DUNN**
    **& BLAIR, L.L.P.**
    123 North Carrizo Street
    Corpus Christi, TX 78401
    Telephone: (361) 885-7500
    Facsimile: (361) 885-0487

**ATTORNEYS FOR REAL PARTIES IN INTEREST**

**CERTIFICATE OF SERVICE**

I certify that on September 27, 2017, a copy of the foregoing was served upon all counsel of record in compliance with the Texas Rules of Appellate Procedure, as follows:

| | |
|---|---|
| Thomas C. Wright | Wallace B. Jefferson |
| wright@wrightclose.com | wjefferson@adjtlaw.com |
| Jessica Z. Barger | Rachel E. Ekery |
| barger@wrightclose.com | rekery@adjtlaw.com |
| E. Marie Jamison | Nicholas Bacarisse |
| jamison@wrightclose.com | nbacarisse@adjtlaw.com |
| Elizabeth H. Rivers | ALEXANDER DUBOSE JEFFERSON |
| rivers@wrightclose.com | & TOWNSEND LLP |
| WRIGHT & CLOSE LLP | 515 Congress Ave., Suite 2350 |
| One Riverway, Suite 2200 | Austin, TX 78701 |
| Houston, Texas 77056 | |

*Attorneys for Relator*

/s/ *Russell S. Post*
Russell S. Post

13

CAUSE NO. DC-16-139

| | | |
|---|---|---|
| IVY GONZALEZ ON BEHALF OF M.R. GONZALEZ AND M.N. GONZALEZ, MINOR CHILDREN | § § § § | IN THE DISTRICT COURT |
| AND | § § | |
| AMY AND JESUS GONZALEZ, SR., AS HEIRS AT LAW OF JESUS GONZALEZ, JR.; AND RENE ELIZONDO *Plaintiffs* | § § § § § § | 229th JUDICIAL DISTRICT |
| VS. | § § § | |
| SOUTHCROSS ENERGY PARTNERS GP, LLC; SOUTHCROSS ENERGY PARTNERS, LP; AND THE ESTATE OF DENNIS HENNEKE *Defendants* | § § § § | DUVAL COUNTY, TEXAS |

---

**Plaintiffs' Motion for Judgment**

---

Plaintiffs Ivy Gonzalez, on behalf of M.R. Gonzalez and M.N. Gonzalez, minor children; Amy Gonzalez and Jesus Gonzalez, Sr., as heirs at law of Jesus Gonzalez, Jr.; and Rene Elizondo (collectively, "Plaintiffs") respectfully file this motion for judgment.

**Summary of the Argument**

The ultimate objective of all rules of civil procedure is "to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law." Tex. R. Civ. P. 1. The rules are to be given a "liberal construction" to achieve that objective. *Id*. The situation that arose in this case is admittedly rare, but it is not unheard of—and interestingly, it arises with some frequency in criminal cases, where the courts have developed useful rules to guide the Court's entry of judgment. The guiding rule is that "a jury's verdict should be upheld if the jury's finding or intention can reasonably be ascertained." *Leal v. State*, No. 04-15-00552-CR, 2016 WL 4013791, at \*6 (Tex. App.—San Antonio July 27, 2016, no pet.).

# EXHIBIT A

Here, there can be no serious debate about what the jury's true "finding or intention" was. Late into the evening of Friday, September 22, 2017, twelve citizens of Duval County stood before the Court under oath and swore unequivocally that they intended for their answers to the charge's damage questions to be multiplied based on the life expectancy of the decedents.

The presiding juror described the jury's intention accurately: "What we wrote we thought that was going to be given per year." Ex. A at 186-87. Without exception, every single juror— even those who did not concur in the verdict on actual damages—confirmed this as the nature of their verdict. *See id.* at 195 (Lopez); *id.* at 197 (Pena); *id.* at 199-200 (Chapa); *id.* at 203 (Perez); *id.* at 204 (Garza); *id.* at 206 (Luna); *id.* at 208 (Ramos); *id.* at 209 (Salinas); *id.* at 211 (Hinojosa); *id.* at 213 (Guerra); *id.* at 217-19 (Molina). The most affecting response came from Juror Luna, who assured the Court that this understanding of the verdict was "my deepest belief." *Id.* at 207. "Everybody believed that." *Id.* In terms that should leave no doubt about the integrity of this jury, he said:

> I feel embarrassed about this. And if there's any blame, then I'm guilty of it. But that was my belief on it. And if I for some reason failed on behalf of those children well I will accept the responsibility for it.

*Id.* (lightly edited). The presiding juror ended by apologizing for the "mistake." *Id.* at 246.

This Court looked all twelve jurors in the eye, questioned them individually, and was impressed by "hearing the 12 of them all be consistent in their statements to the Court." *Id.* at 221. As the Court subsequently emphasized, "the 12 of them have been very consistent about what they meant to do and not all of them spoke to plaintiffs' counsel . . . . all 12 of them were consistent with the multiplier, that's what bothers me. " *Id.* at 231. If even one juror told a different story, the Court might have had questions. "[B]ut they were all consistent." *Id.* Thus, "in light of the testimony that was given after the Judge polled all of the jurors, the Court found their testimony to be credible so I feel like I have to receive the verdict . . . ." *Id.* at 248.

2

To be clear, the jury was not confused about its task. It understood that it was being asked to award a total sum for the Plaintiffs' injuries. But it made a clerical mistake in expressing that award on the verdict form, overlooking the fact that it (the jury, as opposed to the Court and parties) needed to complete the equation necessary to award the total sum. As Juror Molina explained, "we thought that we had to state what they were going to get for one year and then they themselves would multiply by the number of years that . . . Mr. Gonzalez and Mr. Elizondo were going to be liable for . . . . We didn't think we had to do that." *Id.* at 217.

As a result, the jury simply failed to finish its work; its damage answers represented only one part of a mathematical equation that the jury left unfinished. The jury agreed to award damages per year based on the life expectancy of the decedents, but then it failed to set forth that part of the verdict on the verdict form.

This kind of problem is not unprecedented. A particular judge might see it come to pass only once in a blue moon, or maybe never. But in the long history of the law, it has been occurring ever since the commitment to written verdicts was made. Hence, the law has come to supply a precise solution to be deployed in fitting circumstances. In fact, it supplies two.

If recognized in time, trial courts have the authority to resolve a jury's written mistake in filling out the verdict form by recalling the jury to engage in further deliberations. Plenty of valid precedent upholds this solution. *See Rodgers v. State*, 442 S.W.3d 547, 550-51 (Tex. App.—Dallas 2014, pet. ref'd) ("Courts have consistently decided that trial courts do not err when the court returns the jury to further deliberate or correct the verdict form after the jury informs the court there was a written mistake in filling out the verdict form."). Indeed, one of the leading cases involved an error in a damages verdict. *See El Paso Elec. Co. v. De Garcia*, 10 S.W.2d 426, 427 (Tex. Civ. App.—El Paso 1928, no writ). Texas Rule of Civil Procedure 295 carries these decisions forward into modern practice.

3

If not recognized in time—*i.e.*, if it is too late to have the jury salvage its own verdict—then the jury's written mistake in filling out the verdict form undoubtedly warrants a new trial. *See Caylat v. Houston E. & W.T. Ry. Co.*, 252 S.W. 478, 482 (Tex. 1923); *Burchfield v. Tanner*, 178 S.W.2d 681, 683 (Tex. 1944); *see generally* 4 McDonald & Carlson, Tex. Civ. Prac. § 25:17[d] (2d ed. 2016). This is the rule, for example, when the jury accidentally returns "'a larger or smaller sum than they intended.'" *Burchfield*, 178 S.W.2d at 683 (citation omitted).

The issue, therefore, is not about *whether* the Court has the authority to solve the rare problem before it. Rather, the issue about *which* of the two solutions fits the circumstances best. The Court should either (i) render a judgment on the corrected, true verdict or (ii) order a new trial. (In no event is a judgment on the first, erroneous verdict warranted.) Making a full record of Friday's proceedings was the correct decision because now, in light of the applicable precedents, the Court can accurately determine which of the two acceptable solutions to deploy.

The Court acted properly by recalling the jury in a timely and fair fashion, crediting the jury's unanimous confession of clerical error during the poll, and ordering further deliberations. Now that the jury has corrected its verdict, there is no need for the drastic remedy of a new trial. The corrected verdict is valid in all respects. The Court should accept it and render a judgment in the Plaintiffs' favor.

**Argument**

"There can be only one final verdict in a trial," *McCarty v. Morrison*, 468 S.W.2d 350, 352 (Tex. 1971), and because of this trial's unusual course of events, the Court was right to delay its decision about which is the "true verdict." With the benefit of a full factual record documenting the critical occurrences, the question of which verdict to finally accept is ready to be decided.

**I.      The Court attained the jury's true verdict properly.**

**A.      Recalling the jury was proper.**

The principal dispute is about whether the Court, having discharged the jury, had the authority to recall the jury and conduct a poll about the possibility of a mistaken verdict. It did.

Deep-seated Texas precedent upholds recall decisions in circumstances like this case. Fortunately, in addition to the legacy of those decisions, the Court can take guidance from a 2016 United States Supreme Court decision approving of this very practice.

In *Dietz v. Bouldin*, 136 S. Ct. 1885 (2016), the Supreme Court held "a federal district court has the inherent power to rescind a jury discharge order and recall a jury for further deliberations after identifying an error in the jury's verdict." *Id.* at 1890. To be sure, "this power is limited in duration and scope, and must be exercised carefully to avoid any potential prejudice." *Id.* But in light of the clear record that has now been made, it is evident that the Court's handling of these unusual circumstances satisfied the standard of *Dietz*.

*Dietz* was a routine negligence case about a vehicle collision. The defendant admitted causing damages of at least $10,136, but because of confusion, the jury awarded zero damages. *Id.* The district court discharged the jury and the jurors "left the courtroom," *id.*, with one leaving the courthouse entirely, *id.* at 1891, but the judge recalled the jurors, questioned them as a group, and instructed them to deliberate again and award at least the stipulated damages. *Id.*

5

Upholding this procedure, the Court held that "a district judge has a limited inherent power to rescind a discharge order and recall a jury in a civil case where the court discovers an error in the jury's verdict." *Id.* at 1892. Writing for the Court, Justice Sonia Sotomayor explained that, "[c]ompared with the alternative of conducting a new trial, recall can save the parties, the court, and society the costly time and litigation expense of conducting a new trial with a new set of jurors." *Id.* at 1893.

Of course, this inherent power must be exercised judiciously "in light of the guarantee of an impartial jury that is vital to the fair administration of justice." *Id.* Thus, a court considering recalling a jury should "determine whether any juror has been directly tainted" and should balance a number of additional facts that may be probative of prejudice, such as—

- The length of delay between discharge and recall;

- Whether the jurors have spoken to anyone about the case after discharge;

- The reaction to the verdict; and

- Access to smartphones or the internet.

*Id.* at 1894-95. Balancing these factors is a matter within the court's discretion. *Id.* at 1895.

Importantly, the Court refused to endorse formulaic bright-line rules such as presence in the courtroom or mingling with bystanders. It upheld a case-specific, discretionary determination about "potential prejudice": "There is no good reason to prefer a test based on geography or identity over an inquiry focused on potential prejudice." *Id.* at 1896.

In this way, the U.S. Supreme Court has repudiated a "Dumpty Humpty theory of the jury" and refused to hold that, once discharged, a jury can never be recalled and put together again. *Id.* *Dietz* proves convincingly that trial courts have the power to recall juries for further deliberations in appropriate circumstances, and happily, there is a long line of Texas cases (albeit old and relatively rare) recognizing these same principles. In short, *Dietz* reflects Texas law.

6

According to a leading treatise, the general rule in Texas is that a jury may not be recalled after discharge to correct an error. Still,

> The general rule is not without exceptions. Its object is to avoid the possibility of jury tampering and to eliminate the loss of confidence in the sanctity of the verdict that would be produced by allowing jurors to overturn their findings. Hence, when error in the verdict is discovered after the jurors have been discharged, but before they have left the courthouse or have had an opportunity to encounter improper influences, they remain within the control of the court and may be reassembled promptly to correct the error or further to deliberate.

4 McDonald & Carlson Tex. Civ. Prac. § 25:17 (2d. ed. 2016). Each case "depends on the individual circumstances." *Id.*

The seminal Texas Supreme Court decisions uphold recall decisions in cases like this one. They involved juries being recalled after the jury had returned its verdict and dispersed for dinner, *McKean v. Paschal*, 15 Tex. 37, 38 (1855), and even the following morning, *Howard v. Kopperl*, 5 S.W. 627, 631–32 (Tex. 1887). In *McKean*, the Supreme Court laid down the rule that a recall is allowed if there is "no pretense of any misconduct on the part of the jury, nor improper influence used to procure the correction of the verdict." *McKean*, 15 Tex. at 38.

Since before the Civil War, then, Texas courts have been empowered to recall juries and correct erroneous verdicts. Recalls are typically appropriate when they occur shortly after the jury has been discharged. *See*, *e.g.*, *El Paso Elec. Co.*, 10 S.W.2d at 427 ("later in the afternoon"); *Kansas City, M. & O. Ry. Co. v. Treadwell & Wilkison*, 164 S.W. 1089, 1090–91 (Tex. Civ. App.—Austin 1914, writ ref'd) ("about ten minutes"); *Sigal v. Miller*, 25 S.W. 1012 (Tex. Civ. App. 1894, no writ) ("immediately"). The Court of Criminal Appeals has laid down a strong presumption that recall is proper "[w]hen the jury has not separated or have only momentarily separated and are still in the presence of the court and it appears that no one has talked to the jurors about the case." *Webber v. State*, 652 S.W.2d 781, 782 (Tex. Crim. App. 1983) (citing *West v. State,* 340 S.W.2d 813, 815 (Tex. Crim. App. 1960)). But that scenario is *sufficient*—not *necessary*—for a recall.

7

In this case, the defect in the jury's verdict was recognized within minutes after the jury was discharged and it was called to the Court's attention within 30 minutes. Ex. A at 165-67. While the Court awaited the return of defense counsel, it recalled the jury to the courthouse. *Id.* Although several of the jurors had left the courthouse, all except the presiding juror went home; she was at the courthouse the whole time. *Id.* at 189, 195, 198, 200, 203, 204, 206, 209, 215, 218; *see also id.* at 211 (mother's home). None was exposed to any outside influences. *Id.*

Three of the jurors reported contact with the lawyers, but aside from the brief conversation in which the presiding juror revealed the jury's intention with its damage verdict, none of them discussed the verdict's substance. *Id.* at 188-89, 193, 201, 217-18. The other jurors reported no contact with any of the lawyers. *Id.* at 195, 198, 203, 205, 206, 208-09, 210, 211-12, 216. Certainly, none of the jurors reported conversations that might be considered "improper influence" (or in the words of Justice Sotomayor, "prejudice").[1] Indeed, the Court's interviews with the jury made it clear that the presiding juror independently volunteered the error to the Plaintiffs' lawyers. *Id.* at 221 ("Okay, you know, she said 'I told them well it's going to be per year,' like that came out of her mouth and that's when I guess it was like, uh oh, the light turned on in somebody's head but I am not going to sit here and assume the lawyers somehow injected this in their minds.").

The occurrence of "outside influence" is "a question of fact" to be proven with evidence. *E.g.*, *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000); *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996). The Court was thus correct to examine the jurors and, "having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of [these] witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

---

[1] Jurors discussed the mistake in filling out the verdict form in the jury room after being recalled. Ex. A at 194, 195, 198, 202, 206, 209, 210, 212, 218. But those conversations among jurors could not qualify as "outside influences," and in any event, none was improper.

In sum, there is ample reason for the Court to conclude there was no "improper influence" that would bar the jury from retiring for further deliberations and correcting its defective verdict. Had the Court not made such a careful record of the proceedings, the answer might be different. But the Court's thorough investigation and the jury's unflinching honesty leaves no question that the jury was not improperly influenced and that it was appropriate to order further deliberations under the unique circumstances of this case.

The decision rule laid down by the Supreme Court in *McKean* applies fully to this case: "There is no pretense of any misconduct on the part of the jury, nor improper influence used to procure the correction of the verdict." *McKean*, 15 Tex. 37 at 38. Consequently, "there is no sufficient ground" to argue that recall was improper. *Id.*

## B.      Further deliberations were proper.

The other main dispute is about whether the Court, having recalled the jury and polled it, was justified in retiring the jury for further deliberations to render a true verdict. It was.

Texas law has an "established rule" about what kind of verdicts warrant correction. *Burchfield v. Tanner*, 178 S.W.2d 681, 683 (1944). It is that "relief may be had from the unanimous mistake of the jury in the nature of a clerical error in announcing or transcribing its verdict already arrived at." *Id.* (following *Caylat v. Houston E. & W.T. Ry. Co.*, 252 S.W. 478, 482 (Tex. 1923)); *see id.* ("such mistake must always be one of that nature as contradistinguished from a mistake in the interpretation of the evidence, or of the charge of the court, or of the legal effect of the answers, or of some other similar mistake").

Texas Rule of Civil Procedure 295 is the modern codification of this long-settled principle. Titled "Correction of Verdict," Rule 295 acknowledges a trial court's authority to "retire the jury for further deliberations" if a verdict is "defective . . . incomplete, or not responsive to the questions contained in the court's charge, or the answers to the questions are in conflict":

9

> If the purported verdict is defective, the court may direct it to be reformed. If it is incomplete, or not responsive to the questions contained in the court's charge, or the answers to the questions are in conflict, the court shall in writing instruct the jury in open court of the nature of the incompleteness, unresponsiveness, or conflict, provide the jury such additional instructions as may be proper, and retire the jury for further deliberations.

Tex. R. Civ. P. 295; *see also* Tex. R. Civ. P. 290 ("A verdict is a written declaration by a jury of its decision, *comprehending the whole or all the issues submitted to the jury*, and shall be either a general or special verdict, as directed, which shall be signed by the presiding juror of the jury." (emphasis added)).

Here, the jury poll revealed errors of the kind that both Rule 295 and its predecessors deem worthy of correction by further deliberation. In the words of *Burchfield,* this is a case in which the initial future damage findings represent a "unanimous mistake of the jury in the nature of a clerical error in announcing or transcribing its verdict already arrived at." *Burchfield*, 178 S.W.2d at 683. And in the words of Rule 295, the initial verdict warranted "further deliberations" because it was "defective," "incomplete," and/or "not responsive to the questions contained in the court's charge." Tex. R. Civ. P. 295. In essence, the jury failed to finish its work because it failed to express the full extent of its damage awards on the verdict form. Precedent supports these conclusions.

One important recent precedent is *Leal v. State*, No. 04-15-00552-CR, 2016 WL 4013791 (Tex. App.—San Antonio July 27, 2016, no pet.). *Leal* squarely held "the trial court did not err in allowing the jury to complete its verdict" after a clerical error in the verdict form was recognized, and rejected the notion that courts can look only to the face of the verdict to identify such a mistake: "We disagree that the manner in which the jury's mistake is discovered is relevant to the analysis." *Id.* at *6; *see also Rodgers v. State*, 442 S.W.3d 547, 550-51 (Tex. App.—Dallas 2014, pet ref'd) (upholding recall and correction of verdict after "the jury foreman advised the court he had signed the wrong verdict form").

10

*Faulk v. Bluitt*, 211 S.W.3d 418 (Tex. App.—Waco 2006, pet. denied), applied the rule to uphold a decision like this one: "We hold that the trial court had discretion under Rule 295 to order the jury to continue deliberations because the original verdict answers were nonresponsive and reflected jury confusion, and the trial court neither erred nor abused its discretion under the circumstances of this case." *Id.* at 423. Importantly, *Faulk* also stands for the proposition that a court can identify Rule 295 defects by looking to all of the circumstances—not just the verdict. *See id.* at 419 (using jury notes as evidence of a verdict defect).

A seminal case in point is *Missouri, K. & T. Ry. Co. of Texas v. Burrough*, 46 S.W. 403 (Tex. Civ. App. 1898, writ ref'd), which concerned faulty damage findings like those in this case. *Burrough* is important not just because it upheld a decision to order further deliberations on damage findings, but also because it identified a Rule 295 defect based on all the circumstances. Even though the *Burrough* verdict appeared to be acceptable on its face, the trial court decided (and the court of appeals affirmed) that a Rule 295 defect existed because of what jurors told the judge in response to questioning. *Id.* at 403-04 ("the judge asked the jury what they meant by exemplary damages, and they replied that they meant doctor's bills and medicine, when the judge stated to the jury that he had not charged on exemplary damages, and asked whether they intended to find doctor's and medical bills as actual damages, to which the jury replied that they did; whereupon the judge requested the jury to retire and assess their damages as actual damages"). Similar scenarios have recurred over the years. *See*, *e.g.*, *Webber v. State*, 652 S.W.2d 781, 782 (Tex. Crim. App. 1983) (en banc) (conversation with jury foreman and jury poll revealed clerical error); *Sigal v. Miller*, 25 S.W. 1012, 1013 (Tex. Civ. App. 1894, no writ) (jury recalled and allowed to correct clerical error after "counsel for the plaintiff called the attention of the court" to a variance between the pleadings and the verdict).

Finally, the most factually applicable precedent from the San Antonio Court of Appeals is *Galveston, H. & S.A. Ry. Co. v. Botts*, 55 S.W. 514, 515 (Tex. App—San Antonio 1900, no writ). The original verdict in that case paralleled the one that occurred here. Even though the jury charge asked for an "aggregate" damage finding, the original verdict supplied a *disaggregated* finding. *Id.* at 609-10. "The jury was instructed to find for the *total* damage to all the cattle," but in the initial verdict, it instead wrote in "the damage to *each one of an unspecified number* of cattle." *Id.* This rendered the verdict not "responsive." *Id.*[2] The same is true here.

## II.     The Court should enter judgment on the true verdict.

Having determined that the jury was properly recalled and the final verdict returned by the jury was the true verdict, the duty of this Court is clear: "The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict . . . ." Tex. R. Civ. P. 301.  Thus, Plaintiffs request that this Court render judgment in accordance with the true verdict. A form of judgment is attached to this motion for the convenience of the Court.

### CONCLUSION

The Court should render judgment for the Plaintiffs in accordance with the true verdict as set forth in the attached proposed form of judgment. Plaintiffs request all other relief to which they are entitled.

---

[2] Even if these jurors had not testified to their clerical error so consistently—i.e., if the testimony had been ambiguous and left the Court with doubts about their true intent—the Court's decision to order further deliberation would have been sound. This is the lesson of *Harris County v. Patrick*, 636 S.W.2d 211, 212 (Tex. App.—Texarkana 1982, no writ) ("When the trial court, in an effort to insure a just, fair and impartial adjudication of the rights of the litigants, requests a jury to deliberate further on *apparently* conflicting findings, we see no abuse of discretion even though the findings actually are not *legally* conflicting." (emphasis added)).

12

Respectfully submitted,

By: */s/ David L. Rumley*

<table>
<tr><td>Baldemar Gutierrez</td><td>David L. Rumley</td></tr>
<tr><td>balde@gutierrezlawfirm.com</td><td>State Bar No. 00791581</td></tr>
<tr><td>J. Javier Gutierrez</td><td>drumley@wigrum.com</td></tr>
<tr><td>Javier@gutierrezlawfirm.com</td><td>Ross W. Evans</td></tr>
<tr><td>Ana Gutierrez Castillo</td><td>State Bar No. 24064771</td></tr>
<tr><td>ana@gutierrezlawfirm.com</td><td>revans@wigrum.com</td></tr>
<tr><td>**THE GUTIERREZ LAW FIRM, INC.**</td><td>**WIGINTON RUMLEY DUNN & BLAIR, L.L.P.**</td></tr>
<tr><td>700 E. Third Street</td><td>123 North Carrizo Street</td></tr>
<tr><td>Alice, Texas 78332</td><td>Corpus Christi, TX 78401</td></tr>
<tr><td>Telephone: (361) 664-7377</td><td>Telephone: (361) 885-7500</td></tr>
<tr><td>Facsimile: (361) 664-7245</td><td>Facsimile: (361) 885-0487</td></tr>
</table>

Mark A. Gonzalez
mgon3@yahoo.com
Attorney at Law
924 Leopard Street
Corpus Christi, Texas 78401
Telephone: (361) 882-6600
Facsimile: (361) 882-6608

**ATTORNEYS FOR PLAINTIFF IVY GONZALEZ,
ON BEHALF OF M.R. GONZALEZ AND M.N. GONZALEZ, MINOR CHILDREN**

By: */s/ Kevin W. Liles*          By: */s/ Russell Post*

<table>
<tr><td>Kevin W. Liles</td><td>Russell S. Post</td></tr>
<tr><td>State Bar No. 00798329</td><td>State Bar No. 00797258</td></tr>
<tr><td>kevin@lilesharris.com</td><td>rpost@beckredden.com</td></tr>
<tr><td>Stuart R. White</td><td>Chad Flores</td></tr>
<tr><td>State Bar No. 24075268</td><td>State Bar No. 24059759</td></tr>
<tr><td>swhite@lilesharris.com</td><td>cflores@beckredden.com</td></tr>
<tr><td>Bryan K. Harris</td><td>Mary Kate Graffito</td></tr>
<tr><td>State Bar No. 09054700</td><td>State Bar No. 24098296</td></tr>
<tr><td>bkharris@lilesharris.com</td><td>mkraffetto@beckredden.com</td></tr>
<tr><td>**LILES HARRIS WHITE PLLC**</td><td>**BECK REDDEN LLP**</td></tr>
<tr><td>500 N. Water Street, Suite 800</td><td>1221 McKinney Street, Suite 4500</td></tr>
<tr><td>Corpus Christi, Texas 78478</td><td>Houston, TX 77010</td></tr>
<tr><td>Telephone: (361) 826-0100</td><td>Telephone: (713) 951-3700</td></tr>
<tr><td>Facsimile: (361) 826-0101</td><td>Facsimile: (713) 951-3720 (Fax)</td></tr>
</table>

**ATTORNEYS FOR PLAINTIFFS
AMY GONZALEZ AND JESUS
GONZALEZ, SR., AS HEIRS AT LAW
OF JESUS GONZALEZ, JR., AND
RENE ELIZONDO**

**ATTORNEYS FOR PLAINTIFFS**

13

## CERTIFICATE OF SERVICE

I certify that on September 27, 2017, a copy of the foregoing was served upon all counsel of record in compliance with the Texas Rules of Civil Procedure, as follows:

Jessica Z. Barger
barger@wrightclose.com
E. Marie Jamison
jamison@wrightclose.com
Elizabeth H. Rivers
rivers@wrightclose.com
WRIGHT & CLOSE LLP
One Riverway, Suite 2200
Houston, Texas 77056
*Attorneys for Southcross Defendants*

Mark Strand Mo
mstrandmo@bpgrlaw.com
David Dubois
dadubois@bpgrlaw.com
John A. Guerra
jguerra@bpgrlaw.com
BROCK, PERSON, GUERRA & REYNA, P.C.
17339 Redland Road
San Antonio, Texas 78247
*Attorneys for Southcross Defendants*

Gregory A. Holloway
gholloway@tekellbook.com
TEKELL, BOOK, ALLEN & MORRIS, LLP
1221 McKinney, Suite 4300
Houston, Texas 77010
*Attorneys for Defendant,*
*Galbraith Contracting, Inc.*

Ernest P. Giger, Jr.
egieger@glllaw.com
Robert I. Siegel
rsiegel@glllaw.com
John E.W. Baay II
jbaay@glllaw.Com
Mr. Brendan P. Doherty
bdoherty@glllaw.com
Charlotte A. Fields
cfields@glllaw.com
GIEGER, LABORDE & PEROUSE, L.L.C.
5151 San Felipe, Suite 750
Houston, Texas 77056
*Attorneys for Southcross Defendants*

/s/ *Russell S. Post*
Russell S. Post